UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X

**ELIZABETH MACANLALAY**,
        *Plaintiff*,

   - against -

**SHELDON PIKE and
MARIE JANELLE PIKE**,
        *Defendants*.

---------------------------------------------------------X

Index No. 23-cv- _____

**COMPLAINT**

(Jury Trial Demanded)

    **PLAINTIFF** Elizabeth Macanlalay ("Plaintiff" or "Macanlalay"), by and through her attorneys, the Law Offices of Manuel B. Quintal, P.C., as and for her complaint, alleges:

## NATURE OF THE ACTION

    1.    This matter is a straightforward wage and hour case premised on Defendants' willful violations of the New York Labor Law ("NYLL").  Macanlalay worked as a live-in domestic employee of the Defendants. She worked more than forty four (44) hours a week for all weeks from October 2019 through November 2022. Defendants did not pay Macanlalay the minimum wage for all of her hours of work and did not pay her the statutorily-required rate of one and one-half times the regular rate of pay for any and all hours that Plaintiff worked in excess of forty four (44) hours each workweek.

    2.    Plaintiff likewise brings this action to recover damages for the sexual assault she suffered at the hands of Defendant Sheldon Pike ("Sheldon") and for the defamatory accusations she was subjected to by Defendant Marie Janelle Pike ("Janelle").

    3.    Plaintiff files this lawsuit to obtain redress for her injuries and to demonstrate that even a lowly domestic employee can hold her employers accountable under the law.

1

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over Defendants Sheldon and Janelle, and venue is proper in this Court because both Defendants reside and are domiciled within the Southern District of New York and because a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York pursuant to 28 U.S.C. §1391(b), Plaintiff Macanlalay having been employed by Defendants in this district.

**PARTIES**

6. Plaintiff Elizabeth Macanlalay is an adult female individual who is a resident and domiciliary of the state of New Jersey. She is married and has two children.

7. Defendant Sheldon Pike is an adult male individual who is a resident and domiciliary of the state of New York.

8. Defendant Marie Janelle Pike is an adult female individual is a resident and domiciliary of the state of New York.

9. Upon information and belief, Defendants Sheldon and Janelle, at all times relevant, are husband and wife. They have three minor children.

10. Macanlalay was employed by Sheldon and Janelle as a domestic worker and worked at Defendants' residences located at 170 East 77th Street, Apt. 9C and at 430 East 86th Street, Apt. 7C, both in Manhattan, New York.

11. At all times relevant, Sheldon and Janelle had power over personnel decisions regarding Plaintiff's employment with them.

12. At all times relevant, Sheldon and Janelle had power over payroll decisions regarding Plaintiff's employment with them.

13. At all times relevant, Sheldon and Janelle had the power to hire and fire Macanlalay, establish and pay her wages, set her work schedules and maintain her employment records.

14. At all times relevant to this action, Macanlalay was an employee of each of Defendants within the meaning of the NYLL §§2, 190(2), and 651(5).

15. At all times relevant, each Defendant was Macanlalay's employer within the meaning of the NYLL.

16. All of the acts alleged in this Complaint were done, performed and implemented by Defendants Sheldon and Janelle.

## **THE FACTS**

17. Sheldon and Janelle hired the services of Macanlalay as a domestic worker in late October 2019.

18. As a domestic employee, Macanlalay did housekeeping chores, washed the dishes, cleaned the restrooms, vacuumed the floor, threw the garbage, watered the plants, and did the laundry and ironing of clothes. Macanlalay also performed services as nanny of the Defendants' three minor children. She assisted the children in bathing, grooming, feeding and dressing. Most of the time, she did the groceries, and cooked and prepared food for Defendants' family.

19. As such domestic employee, Macanlalay reported directly to both Sheldon and Janelle, each of whom had the right to control her work.

20. Sheldon and Janelle typically required Macanlalay to work at least 14-hour work-days, and sometimes 16-hour work-days, every day, with rarely any days off.

21. Macanlalay's regular daily working schedule started at 6 a.m. when she had to prepare breakfast for the family and ended at around past 8:00 p.m. at night, after she had cleaned the kitchen and had assisted the children to go to bed.

22. Sheldon and Janelle typically required Macanlalay to work or suffered her to work for at least ninety eight (98) hours per week.

23. From late October 2019 through March 2020, Sheldon and Janelle paid Macanlalay for her services at the rate of one hundred thirty dollars ($130.00) per day.

24. Defendant Janelle gave Macanlalay her wages in cash every week.

25. During the pandemic months from April 2020 through May 2021, Sheldon and Janelle required Macanlalay to continue working for them at their Manhattan residences. As before, Macanlalay was always at Defendants' beck and call.

26. During those pandemic months, Sheldon and Janelle paid Macanlalay a fixed weekly compensation of five hundred fifty dollars ($550.00), which Defendants gave to Plaintiff in cash every weekend.

27. Starting in June 2021, Sheldon and Janelle paid Macanlalay a daily wage of one hundred fifty dollars ($150.00). As before, it was Janelle who gave Plaintiff her wages in cash every weekend.

28. Starting in February 2022, Sheldon agreed to pay Macanlalay a weekly compensation of one thousand two hundred dollars ($1,200.00). He also agreed to give Plaintiff two weekends off every month or four days off every month.

29. Whenever Macanlalay availed of her weekends off starting in February 2022, she typically worked at least seventy (70) hours for such weeks. Otherwise, she still worked or was suffered to work at least ninety eight (98) hours per week.

30. Defendants Sheldon and Janelle regularly suffered or required Macanlalay to work in excess of forty four (44) hours per week during the period of her employment.

31. Although Macanlalay worked more than forty four (44) hours each workweek, Defendants Sheldon and Janelle did not pay her time and a half for the extra hours beyond forty four (44) each workweek.

32. Sheldon and Janelle did not compensate Macanlalay at the NYLL statutorily-required rate of one and one-half times her regular rate of pay, for any and all hours that Macanlalay worked per week in excess of forty four (44).

33. Upon information and belief, Sheldon and Janelle did not keep accurate records of wages or of hours worked by Macanlalay.

34. Sheldon and Janelle did not furnish Macanlalay with a wage statement that accurately listed the following: the dates of work covered by the payment; Plaintiff's name; Employers' names; Employers' address and telephone number; Plaintiff's hourly rate of pay; Plaintiff's overtime rate of pay; and the basis for computing Plaintiff's rate of pay.

35. Upon information and belief, Sheldon and Janelle were at all times aware of their legal obligation to pay Macanlalay overtime pay at the rate of one and one-half times her regular rate of pay for hours worked per week in excess of forty four under the NYLL. In addition, Sheldon and Janelle were aware of their legal obligation to issue Macanlalay accurate wage statements on each payday in accordance with the NYLL. Thus, their violations of the NYLL with respect to Macanlalay were willful.

36. Upon information and belief, sometime in 2021, Sheldon instituted divorce proceedings against Janelle in New York County Supreme Court.

37. As a result of the divorce proceedings, the two Defendants maintained separate residences in Manhattan, and Macanlalay had to clean both residences.

38. Sometime in 2022 and during the pendency of the Defendants' divorce proceedings, Defendant Janelle's 77th Street apartment had to undergo some construction work.

39. Upon information and belief, Defendants agreed to temporarily switch residences while construction was going on at Defendant Janelle's 77th Street apartment.

40. Upon information and belief, Sheldon agreed to temporarily stay at the 77th Street apartment while Janelle and the three children would stay at Sheldon's 86th Street apartment.

41. On the evening of November 22, 2022, Macanlalay went to Defendant Janelle's 77th Street apartment where Sheldon was temporarily residing, in order to discuss some employment issues and her immigration sponsorship with Sheldon.

42. At the end of their discussion, Macanlalay bade farewell to Sheldon and moved toward the door to leave the apartment.

43. While Macanlalay was about to leave the apartment, Sheldon suddenly moved toward her and, unexpectedly without any warning, kissed her on the cheeks close to her mouth. Sheldon then immediately closed the door as soon as Macanlalay was outside the apartment premises.

44. Macanlalay was utterly shocked at what Sheldon unexpectedly did to her and she did not know how to react. It was all so sudden. She immediately glided out of the apartment.

45. Sheldon kissed Macanlalay without her consent and in order to satisfy his own sexual desires.

46. Sheldon's physical contact with Macanlalay was unwelcome, offensive and wrongful.

47. Unknown to Macanlalay, the unwanted kissing done by Sheldon to her was caught on the closed circuit television (CCTV) at Defendant Janelle's 77th Street apartment.

48. Upon information and belief, Janelle later viewed her CCTV recording and found out about the unwanted kissing incident.

49. About a couple of days later after the unwanted kissing incident, Janelle informed Macanlalay that she had seen the CCTV recording and that she wanted to hold a meeting among everybody involved.

50. Macanlalay told Janelle that she was herself surprised at Sheldon's unwanted kissing of her and that the incident was causing her emotional distress as she had no intentions of causing the Defendants any trouble and that further, she had no romantic interest or feelings at all for Sheldon.

51. On or about November 27, 2022, Macanlalay and Defendants Sheldon and Janelle had a meeting whereby Janelle revealed that she had seen the CCTV recording that showed the unwanted kissing incident.

52. During the meeting, Sheldon was apologetic but did not deny that he had indeed subjected Plaintiff to an unwanted kissing.

53. During the meeting, Janelle began to accuse both Defendant Sheldon and Macanlalay as having a sexual relationship.

54. Macanlalay vigorously denied that she had any sexual relationship with Sheldon.

55. Sheldon likewise denied that he had any sexual relationship with Plaintiff.

56. As a result of the worsening marital relationship between the Defendants which had by then already included Macanlalay in the mix of their marital issues, and also because of the embarrassing and awkward incident with Sheldon, Macanlalay decided to discontinue her employment relationship with them.

57. Macanlalay thereafter demanded that she be paid her proper wages for all the time that she had worked for Defendants and also demanded that she be given a separation pay.

58. Janelle did not want to pay Macanlalay any wage adjustments. Neither did she want to pay Macanlalay any separation pay.

59. Sheldon, on the other hand, communicated to Macanlalay that he wanted to negotiate with Plaintiff how much he had to pay to address Macanlalay's demands.

60. Upon information and belief, after the November 27, 2022 meeting, Janelle started to spread the false accusation about the alleged sexual relationship between Defendant Sheldon and Macanlalay to other people, including to her friends, lawyers and broker.

61. As and by way of an example, upon information and belief, sometime late November 2022, Janelle met with her broker named Eyal and she told Eyal that she had caught her husband having sexual relationship with Macanlalay who was their nanny and housekeeper. Upon information and belief, she told her broker that her nanny was sleeping with her husband.

62. Upon information and belief, sometime immediately after the November 27, 2022 meeting and on other occasions after that, Janelle reported to her divorce lawyers that Macanlalay, her nanny, was having sexual relationship with her husband.

63. Upon information and belief, Janelle spread the false sexual relationship between Sheldon and Macanlalay to use it as her leverage in her divorce proceedings with Sheldon.

8

64. Defendant Janelle's publication of the false sexual relationship between Macanlalay and her husband put Macanlalay in a bad light as though Macanlalay were a woman of loose morals.

65. Janelle's publication of the false sexual relationship between Macanlalay and Sheldon adversely reflected on Plaintiff's work performance, which publication cast Macanlalay as though she were sucking up to her boss, and was incompatible with the proper conduct of her job performance.

66. Upon information and belief, Janelle imputed upon Macanlalay the commission of an indictable offense, that is, of adultery, and wanted to show that Macanlalay did something illegal and immoral.

67. The alleged sexual relationship between Defendant Sheldon and Macanlalay that was published by Defendant Janelle was false and had no basis in reality.

68. The false statements that Janelle made after the November 27, 2022 meeting about Macanlalay's sexual relationship with her husband were published with knowledge of their falsity and/or with reckless disregard for the truth.

69. In late November 2022 and on other occasions subsequent to that date, Janelle knew that it was false to state that Macanlalay had a sexual relationship with her husband.

70. Janelle lacked any factual basis for her statement that Macanlalay had sexual relationship with her husband. She saw the CCTV recording herself and she did not see any reciprocal response by Macanlalay to her husband's unwanted kissing. Janelle knew that Macanlalay had spoken the truth when Macanlalay vigorously denied her accusation that Macanlalay and Sheldon had sexual relationship. Janelle had strong reason to doubt the veracity

of her own defamatory claims. Thus, Janelle published her statements with reckless disregard for the truth.

71. Janelle thus knew she was lying when she said that Macanlalay had a sexual relationship with her husband.

72. Janelle's defamatory remarks have caused Macanlalay considerable mental and emotional distress.

73. Janelle's defamatory remarks have likewise caused Macanlalay to spend time and money to communicate with Janelle's broker Eyal, who happened to be Macanlalay's acquaintance as well, to explain the falsity of Janelle's baseless allegations, and thus have likewise caused Macanlalay to lose work opportunities.

74. Janelle's intentional and *per se* defamation of Macanlalay caused Macanlalay to suffer, *inter alia*, the special damages referenced above, and gross impairment of her good name, public embarrassment, humiliation, public impairment of her abilities and integrity, anxiety, emotional upset and public ridicule.

## FIRST CAUSE OF ACTION
### Violation of NYLL, § 652 on Minimum Wage

75. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

76. The minimum wage provisions of Article 19 of the NYLL and the supporting New York State Department of Labor Regulations apply to Defendants and protect the Plaintiff.

77. Defendants Sheldon and Janelle failed to pay Macanlalay the minimum hourly wages to which she was entitled under the NYLL and the supporting New York State Department of Labor Regulations.

78. Pursuant to the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations, Defendants were required to pay Macanlalay the full minimum wage at a rate of $13.50 per hour for all hours worked from late October 2019, and the full minimum wage at a rate of $15.00 per hour for all hours worked from December 31, 2019.

79. Through their knowing or intentional failure to pay minimum hourly wages to the Plaintiff, Sheldon and Janelle willfully violated the NYLL, Article 19, §§ 650 *et seq*., and the supporting New York State Department of Labor Regulations.

80. Due to Defendants' willful violations of the NYLL, Macanlalay is entitled to recover from Defendants her unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorney's fees, costs, and pre-judgment and post-judgment interest.

## SECOND CAUSE OF ACTION
### Violation of NYLL Article 19 on Overtime Pay

81. Plaintiff realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

82. Sheldon and Janelle did not pay Macanlalay any overtime wages for all the time that Macanlalay was suffered or required to work each workweek.

83. During each of the workweeks in her employment with Defendants, Macanlalay worked more than forty four (44) hours per week.

84. During such workweeks, Defendants Sheldon and Janelle did not compensate Macanlalay at time and a half the regular wage rate for all of the overtime hours she worked.

85. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiff.

86. Sheldon and Janelle failed to pay Macanlalay the premium overtime wages to which Macanlalay was entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 44 hours per workweek.

87. Defendants failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Macanlalay.

88. Through their knowing or intentional failure to pay Macanlalay overtime wages for hours worked in excess of 44 hours per workweek, Defendants Sheldon and Janelle willfully violated the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

89. Due to Defendants' willful violations of the NYLL, Macanlalay is entitled to recover from Defendants her unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorney's fees and costs of the action, and pre-judgment and post-judgment interest.

### THIRD CAUSE OF ACTION
**Failure to Provide Proper Wage Statements under NYLL Art. 6, § 195(3)**

90. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

91. Defendants Sheldon and Janelle willfully failed to furnish Macanlalay with statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered by that payment of wage; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

92. Through their knowing or intentional failure to provide Macanlalay with the accurate wage statements required by the NYLL, Sheldon and Janelle willfully violated the NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

93. Due to Defendants' willful violations of the NYLL, Article 6, § 195(3), Macanlalay is entitled to statutory penalty of two hundred fifty dollars ($250.00) per day that Defendants failed to provide her with accurate wage statements, not to exceed a total of five thousand dollars ($5,000.00), plus reasonable attorney's fees, costs, and injunctive and declaratory relief, as provided for by the NYLL, Article 6, § 198(1-d).

## FOURTH CAUSE OF ACTION
### Unpaid Spread of Hours Pay under NYLL

94. Plaintiff repeats the allegations of paragraphs 1 – 106 with the same force and effect as if fully set forth at length herein.

95. Under New York law, an employer is required to pay an employee one extra hour's wages at the minimum wage for any day when the employee's "spread of hours" exceeds 10 hours. N.Y. Comp. Codes R. and Regs. Tit. 12, §142-2.4.

96. Defendants Sheldon and Janelle required Macanlalay to work a spread of hours in excess of ten (10) hours a day.

97. Sheldon and Janelle willfully failed to pay Macanlalay spread-of-hours wages of an additional hour of pay at the minimum wage for each day Macanlalay had a spread in excess of ten hours per day, in violation of the New York Labor Law and the New York Minimum Wage Act and N.Y. Comp. Codes R. and Regs. Tit. 12, §142-2.4.

98. Due to Defendants' NYLL violations, Macanlalay is entitled to recover from Sheldon and Janelle her unpaid spread-of-hours wages in an amount to be determined at trial,

plus statutorily prescribed liquidated damages as well as reasonable attorney's fees and costs of this action, and interest pursuant to New York Labor Law §§198 and 663.

## FIFTH CAUSE OF ACTION
## Battery

99. Plaintiff repeats the allegations of paragraphs 1 – 59 with the same force and effect as if fully set forth at length herein.

100. Defendant Sheldon committed battery against Macanlalay when he suddenly kissed her.

101. Sheldon intentionally and, without her consent, suddenly kissed Macanlalay to satisfy his own sexual desires.

102. Sheldon's physical contact with Macanlalay was offensive, unwelcome, unprovoked, and wrongful under all the circumstances.

103. Sheldon knew or should have known that Macanlalay would find such action and conduct offensive.

104. Sheldon's conduct was the direct and proximate cause of Macanlalay's past and future substantial damages, including severe emotional distress, humiliation, mental anguish, physical pain, lasting psychological and pecuniary harms, loss of dignity, and invasion of privacy.

105. By reason of the foregoing, Sheldon is liable to Macanlalay for actual, compensatory and punitive damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## Defamation and/or Slander *Per Se*

106. Plaintiff repeats the allegations of paragraphs 1 – 74 with the same force and effect as if fully set forth at length herein.

107. Defendant Janelle published defamatory statements about Macanlalay.

108. Specifically, these defamatory statements included false assertions that Macanlalay engaged in serious illegal and immoral activity, specifically, in sleeping with Janelle's husband or in having a sexual relationship with Janelle's husband. The false assertions impute on Macanlalay the indictable offense of adultery.

109. The defamatory statements included false assertions that tended to expose Macanlalay to public contempt, hatred, ridicule, aversion or disgrace, such as those statements that Plaintiff allegedly slept with her married employer, or that Plaintiff allegedly sucked up to her employer to get favors.

110. Janelle published said statements to her friends, lawyers, and broker through her conversations with them in or about late November 2022 and on subsequent dates thereafter.

111. Said statements were untrue and defamatory in that these falsely reported Macanlalay's character and actions, and Defendant Janelle knew or should have known that such statements were false.

112. Janelle published said statements with malice.

113. Janelle published said statements with knowledge of their falsity and/or with reckless disregard for the truth or falsity of such statements.

114. Said statements constitute defamation and/or slander *per se* because they impugn Macanlalay's honesty, trustworthiness, and dependability, by falsely charging her with serious crime and/or other conduct that would tend to injure Macanlalay's reputation.

115. Said statements have caused Macanlalay embarrassment and emotional injury.

116. Janelle is liable to Macanlalay for defamation.

117. As a result of said defamation, Macanlalay continues to suffer from humiliation, loss of standing in the community, loss of self-esteem and public esteem, public disgrace and severe and extreme emotional distress.

118. Janelle's acts were intentional, willful, wanton, malicious and oppressive, and were motivated by a desire to harm Macanlalay without regard for Macanlalay's well-being and were based on a lack of concern and ill will towards Macanlalay, and/or a deliberate or reckless disregard for her, for which Macanlalay is entitled to an award of punitive damages.

119. By reason of the foregoing, Macanlalay has been damaged in an amount to be determined at trial.

## **DEMAND FOR JURY TRIAL**

120. Plaintiff Macanlalay is entitled to and hereby demands a jury trial in this matter.

## **PRAYER**

**WHEREFORE,** Plaintiff demands that judgment be entered against Defendants and an Order be issued:

A. Awarding compensatory damages for all economic loss, including but not limited to back pay, unpaid minimum and overtime wages, and an additional and equal amount as liquidated damages pay and all other benefits to which she is entitled pursuant to the NYLL;

B. Awarding statutory penalty of two hundred fifty dollars ($250) for each day that Defendants failed to provide Plaintiff with proper wage statements, to a maximum amount of five thousand dollars ($5,000), as provided for by NYLL, Article 6;

C. Awarding compensatory damages for all other economic loss, physical and emotional distress, anxiety, humiliation, emotional harm, pain and suffering, work and social disruption, and other grievous harm;

D.     Awarding punitive damages;

E.     Awarding costs and disbursements of this suit, including reasonable attorney's fees;

F.     Awarding pre-judgment and post-judgment interest, and;

G.     Awarding such other and further relief as this Court deems just and proper.

Respectfully submitted.

September 18, 2023.  New York City, New York.

LAW OFFICES OF MANUEL B. QUINTAL, PC
By:
/s/ Manuel B. Quintal
**MANUEL B. QUINTAL** (MQ5186)
291 Broadway, 15th Floor
New York, NY 10007
Tel. No. 212-732-0055
Fax No. 212-587-8933
Email: quintallaw@aol.com

*Counsel for the Plaintiff*

## VERIFICATION

STATE OF NEW YORK     )
COUNTY OF NEW YORK    ) S.S.

**I, ELIZABETH MACANLALAY,** of legal age and a resident of the state of New Jersey, after having been sworn in accordance with law, hereby state that I am the plaintiff in the within action/complaint. I have read the foregoing complaint and know the contents thereof. The contents are true to my knowledge, except as to those matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true.

**ELIZABETH MACANLALAY**

Subscribed to before me this 18th day of September 2023 in New York City, New York.

Notary Public

GABRIEL S DELAMERCED
Notary Public, State of New York
No. 02DE4991732
Qualified in Bronx County
Commission Expires Feb. 10, 2026